# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH SCHNEIDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-cv-149-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Deborah Schneider, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying her applications for disability benefits under Titles II and XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 9). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The

evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## Background

Plaintiff was born November 18, 1969 and was 37 years old at the time of the Administrative Law Judge's ("ALJ") final decision on October 26, 2007.[1] (R. 27). Plaintiff has a high school education. (R. 28). Plaintiff's prior work history consists of work as a customer service representative, a storage worker, and an assistant manager for a discount retail store. (R. 115). She plays piano part-time at her church and teaches occasional piano lessons. (R. 28). Plaintiff alleges a disability onset date of July 1, 1997. (R. 94, 98).

During the hearing held July 13, 2007, plaintiff testified she was diagnosed with Lupus when she was 15. (R. 29). In 1997, after separating from her husband, she moved to Tulsa with her son, the stress of which caused "[her] Lupus to flare." Id. Plaintiff stated her Lupus affected "the majority of [her] body, [her] joints, [] muscles, fatigue, headaches," and she claimed to have developed migraines and intestinal difficulties when the flare ups are at their worst. (R. 30). Plaintiff stated she has a "major" flare up, lasting anywhere from two (2) to four (4) months at least twice each year. She described her joint problems during major flare ups to be "extreme fatigue, swollen, unable to move, very stiff, difficulty in walking and sitting, laying, just the joints just hurt." (R. 31). Plaintiff also stated she has "minor" flare ups, lasting a week or two

---

[1] Plaintiff's application for disability was denied initially and upon reconsideration. (R. 49-53, 54-57, 58-61). A hearing was held before ALJ Lantz McClain July 13, 2007 (R. 24-47), in Tulsa, Oklahoma. By decision dated October 26, 2007, the ALJ found that plaintiff was not disabled at any time through the date of the decision. (R. 8-19). On January 14, 2010, the Appeals Council denied review of the ALJ's findings. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

every six to eight weeks.  Id.  She claimed to be unable to drive or pick up anything weighing more than a "couple of ounces" due to muscle weakness.  Id.

Plaintiff claimed to be unable to perform any housework during major flare ups, stating her mother and sixteen year old son handle household chores.  She claimed to have major flare ups every year from 1997-2007, with a flare up lasting from February to June (2007) being the worst she had experienced.  She stated her pain was most severe during this flare up, and during major flare ups she was consistently confined to bed.  (R. 32).  Plaintiff claimed minor flare ups leave her "very weak" and stiff.  She was able to sit for longer periods of time with less pain (approximately an hour) before returning to bed.  (R. 33).  She claimed to be able to do a load of laundry if necessary, but that would be the only housework she would be able to perform during a minor flare up.  Id.

During what plaintiff considered "relatively good health," plaintiff stated she attended church, playing piano on Sundays, spent "all day" Monday and Tuesday mornings in bed from "extreme fatigue, swollen joints, [and] achiness from [her] activities on Sunday."  Id.  She stated she tried to "build stamina" Tuesday afternoons if she were able in order to go back to church Wednesday evening.  Thursdays were spent in bed recuperating from Wednesday's activities.  Id.  Fridays were spent resting in the morning, then, if plaintiff's health was "considerable" or "relative," she could help with laundry, clean up the kitchen, and "do minor things around the house."  Id.  Plaintiff qualified her statement, saying she did not vacuum or dust, she did not do "anything that [she] would have to lift or do much above [her] head."  (R. 34).

She stated her sleep was interrupted from pain during major flare ups, but during what she considered "relatively normal for [her] position," she admitted she could sleep eight hours

4

with medication. Id. However, she still claimed to have fatigue, saying it was a "normal everyday occurrence." Id.

Plaintiff rated her pain level to be a ten (10) during major flare ups, six (6) to seven (7) during minor flare ups, and four (4) to five (5) most other times. (R. 33-34).

Plaintiff mentioned teaching piano lessons for some income, saying she had one student who receives a lesson twice a month, and she was paid $10.00 per lesson. (R. 35-36). Plaintiff claimed she does not offer lessons during a major flare up because she is unable to sit for the duration of the 30 minute lesson. (R. 36).

Plaintiff claimed to be unable to lift more than five (5) pounds saying she was unable to bend her fingers to grip and had no hand strength. (R. 37). She stated during minor flare ups, she could sit only 30 minutes before needing to stand and stretch. Id. Plaintiff claimed she did not walk, so it was hard for her to judge how far she would be able to, and guessed about a quarter of a mile during minor flare ups. Id. Upon further questioning, she stated she only walked around the house and church, and that she was able to walk from the car to church. (R. 38). Plaintiff admitted she only suffers from mild depression on occasion. (R. 39). She claimed her mother drove her if she needed to go somewhere because she did not like to drive during a flare up because of weakness in her hands and arms. (R. 40). Plaintiff stated she suffered from migraines and vertigo, rendering her unable to walk without holding onto something for support. She claimed on days of "excellent health" she could help her mother in the kitchen, but does not cook. (R. 40-41).

Plaintiff discussed gaps in visits with her treating physician, Mercedes Zano, M.D., explaining she was unable to afford to see Dr. Zano every time she experienced a flare up, and

5

there was "nothing they could do for the Lupus." She mentioned Dr. Zano fills her pain medication (Ultram) and sleeping pill (Restoril) prescriptions whenever plaintiff needs them. (R. 42, 163).

Plaintiff's medical records begin in 1996 with visit notes from R. J. Randolph, III, M.D., which mention Dr. Cooley prescribed plaintiff medication. These records are somewhat illegible, but show history of plaintiff's flare ups. (R. 182-185). Next is a letter dated January 4, 1999 from David A. Cooley, M.D., F.A.C.P. stating plaintiff had been a patient since February 1996. Dr. Cooley offered his opinion that plaintiff was unable to work full time outside her home, but would be able to perform part time work in the home. He did not elaborate what part time work she would be able to perform, but did state she had been diagnosed with Systemic Lupus Erythematosus ("SLE"). (R. 186). Dr. Cooley's visit notes are documented at (R. 187-205) and cover a date range of March 4, 1996 to November 20, 1998. On her November 20, 1998 visit, Dr. Cooley noted plaintiff had a diagnosis of "systemic lupus erythematosus with associated fibromyalgia symptoms." (R. 187). He noted her antinuclear antibodies had tested positive and been "as high as 1:320." Id. He discussed plaintiff using corticosteroids to help her symptoms, but mentioned she was no longer taking them and instead was using "a combination of Restoril, Ultram periodically and Benadryl for sleep." Id. He noted "good range of joint motion throughout" under musculoskeletal systems on several occasions. (R. 187-205).

Next, plaintiff supplied records from Hillcrest Medical Center (Utica Park Clinic), including physician notes and laboratory testing. (R. 206-217). Mercedes Zano, M.D. is plaintiff's treating physician. Plaintiff's first visit with Dr. Zano occurred March 15, 1999. Dr. Zano noted plaintiff's history with SLE, and noted that she had obtained plaintiff's records from

6

her doctors in Kansas. At that time, Dr. Zano diagnosed plaintiff with SLE, in remission, insomnia, mild depression and fibromyalgia. (R. 213). She noted no acute joint swelling, redness or malar rash. Id. Next, on April 14, 1999, Dr. Zano noted plaintiff reported a flare up during the previous month, stating plaintiff reported being very tired with a lot of aches and pains with viral gastroenteritis. (R. 210). At this visit, plaintiff was diagnosed with a history of abnormal Pap smear, chronic cervicitis with HPV, SLE, and anxiety and depression secondary to undergoing a stressful divorce. (R. 211).

Plaintiff did not return to Dr. Zano until July 7, 2000. She requested a letter for disability during this visit. Dr. Zano briefly recounted plaintiff's history with SLE, noted plaintiff reported "several episodes of severe fatigue and joint pain" which kept her in bed from a few days to a couple of weeks. (R. 208). Dr. Zano noted plaintiff did not wish to take prednisone for her symptoms because she suffered side effects when she took it previously. She stated plaintiff uses Ultram and rests when she experiences episodes of joint pain and severe fatigue. Id. Dr. Zano also noted "trigger point tenderness bilaterally in the neck, the scapular area, the hip, the knees, and the elbows" with no acute inflammation. Id. Dr. Zano instructed plaintiff to continue using Ultram, and suggested she have an ANA, SED rate, and CBC run, but plaintiff declined due to financial constraints. Id. Dr. Zano dictated a letter July 7, 2000 detailing plaintiff's complaints and treatment, noting plaintiff informed her a flare up will last anywhere from two days to a week to ten days. (R. 209).

Plaintiff again visited Dr. Zano December 3, 2003, for a follow up regarding her lupus. Much of this visit's notes are illegible, but she was diagnosed with SLE, intermittent. (R. 207). Dr. Zano saw plaintiff again in January, 2006. This is again mostly illegible, but the Court does

7

note a diagnosis of SLE. (R. 206). Plaintiff visited Dr. Zano again October 31, 2006, to "talk to [the] doctor, need[s] letter for disability, [needs medication] refills, [and a] flu shot." (R. 242). Dr. Zano wrote another letter on plaintiff's behalf received by the agency in November, 2006, stating plaintiff had suffered "fatigue and painful arthritis of the hands, shoulders, knees and back," that she takes medication for these symptoms, and that she "has severe flare ups every 4-6 weeks keeping her in bed for days." (R. 238). Dr. Zano also opined "[f]or this she needs disability and I support her request." Id. Plaintiff returned to Dr. Zano June 20, 2007. Again, much of the handwritten notes on this visit record are illegible, but there is a diagnosis of "SLE with intermittent flare ups." (R. 243, 245).

Dr. Zano also completed a RFC form supplied by plaintiff. (R. 246-251). In her opinion, plaintiff was able to lift 10 pounds occasionally and frequently, stand and/or walk less than two hours of an eight hour work day, that she must periodically alternate sitting and standing to relieve pain or discomfort, and that she was limited in her ability to push and/or pull in both her upper and lower extremities. Dr. Zano explained her conclusions as follows:

> Even on good days, patient states [she] can't even lift 25-lbs once. On days of flare ups which is [sic] intermittent, cannot carry anything greater than 10 lbs. Her hands and fingers are swelling, and pain in hips, back and shoulders.

(R. 247). Dr. Zano went on to explain plaintiff's manipulative limitations, checking she was limited in handling (gross manipulation), and fingering (fine manipulation), stating "after playing piano at church and with her students, [her] fingers swell up." (R. 248).

Next, plaintiff visited Steven Y. M. Lee, M.D., an agency physician, for a consultative examination June 5, 2006. (R. 218-224). Dr. Lee noted plaintiff's complaints, and upon physical examination, he observed normal systems, no joint pain or swelling, hand grip strength

8

of 5+/5+. He noted plaintiff drove herself to the exam, had no difficulty heel and toe walking, and used no assistive devices. He noted "intrinsic muscle function of the hands was normal. She was able to manipulate small objects and handle tools with either hand." (R. 218-219).

An agency RFC, completed November 21, 2006 by Shafeek Sanbar, M.D., shows plaintiff able to lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk and sit (each with normal breaks) approximately six (6) hours of an eight (8) hour workday with no additional restrictions. (R. 230-237). Of note in the record are two requests for medical advice from agency reviewers, stating the agency reviewer was considering "equalizing" plaintiff to Listing 14.02B, but was concerned by lack of objective evidence beyond her treating physician's opinion, yet stated there was not a strong case to contradict Dr. Zano's opinion. (R. 225-227, 229). Dr. Sanbar responded stating "[i]t would be extremely helpful to have a more complete report from the TP regarding hospitalizations, current laboratory or x-ray findings, etc… to substantiate the MSS [medical source statement]. The CE internist report, together with the MSS by TP (not dated) regarding pain and fatigue, would suggest at the present time a light RFC." (R. 228).

**Procedural History**

Plaintiff alleges her disabling impairments are "systemic lupus, [and] scoliosis." (R. 114). In assessing plaintiff's qualifications for disability, the ALJ first stated plaintiff met the insured status requirements of the Act through December 31, 2002. (R. 13). Next, he determined at step one of the five step sequential process that plaintiff had not been engaged in substantial gainful activity since July 1, 1997, her alleged onset date. Id. At step two, the ALJ found plaintiff to have the severe impairment of systemic lupus erythematosus. Id.

At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926). The ALJ said:

> The undersigned has carefully compared the [plaintiff's] signs, symptoms and laboratory findings with the criteria specified in all of the Listings of Impairments. The undersigned finds no evidence that the claimant has an impairment or combination of impairments that meets or medically equals any listed impairment.

(R. 14). Before moving to the fourth step, the ALJ found plaintiff had the following residual functional capacity ("RFC"):

> … the [plaintiff] has the residual functional capacity to perform the full range of light work. She is able to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for at least 6 hours out of an 8-hour workday (with normal breaks), and sit at least 6 hours out of an 8-hour workday (with normal breaks).

Id. At step four, the ALJ determined that plaintiff was capable of performing her past relevant work as a scheduler and file clerk, stating either job does not require "performance of work related activities precluded by the [plaintiff's] residual functional capacity (20 C.F.R. 404-1565 and 416.965)." (R. 19). Because the ALJ made his determination at step four, he did not need to proceed to step five, the final sequential step.

### **Issues Raised**

Plaintiff's allegations of error are as follows:

1. The plaintiff's impairment meets or equals listing 14.02, Systemic Lupus Erythematosus,
2. The ALJ failed to consider the combined impact of the plaintiff's impairments,
3. The ALJ's decision is not supported by substantial evidence,
4. The ALJ improperly evaluated plaintiff's pain and fatigue, and

5. The ALJ erroneously held that the plaintiff has the RFC to perform light work subject to limitations.

(Dkt. # 12 at 4).

### Review of Issues

Plaintiff first claims the record shows her impairment meets or equals Listing 14.02. The most discernable argument the Court can address without crossing the boundary into reweighing evidence is "[t]here is no analysis under step 3 of the plaintiff's medically substantiated conditions, her continuing flare ups and her other system involvements in the ALJ's decision in relation to criteria B. In fact, under step 3, no mention of criteria B is made." (Dkt. # 12 at 5).

Upon review of both Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996) and Fisher-Ross v. Barnhart, 431 F.3d 729, the Court finds this case should be remanded to the Commissioner for explanation of his decision at step three. An ALJ is required to "discuss the evidence and explain why he found that appellant was not disabled at step three." Clifton, 79 F.3d at 1009. Fisher-Ross clarified Clifton as follows:

> … we reversed a decision denying a Social Security claimant disability benefits because the administrative law judge (ALJ) 'did not discuss the evidence or his reasons for determining that [claimant] was not disabled at step three' of the mandated five-part sequential evaluation process. [Clifton] at 1008-1010. We concluded the ALJ's 'bare conclusion [was] beyond meaningful judicial review.' Id. at 1009. Relying on Clifton, the district court in this case held an ALJ's similarly terse step three analysis required reversal. The question for our consideration is whether Clifton requires reversal where the ALJ's factually substantiated findings at steps four and five of the evaluation process alleviates *any* concern that a claimant might have been adjudged disabled at step three. We hold that Clifton requires no such result. While we encourage ALJs to render complete findings and conclusions at each step of the five-part process consistent with § 405(b)(1) of the Social Security Act (SSA), we reject a construction of Clifton that, based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings.

11

Fisher-Ross, at 729. In the instant case, unlike in Fisher-Ross, absent a reweighing of the evidence the Court cannot conclude that the ALJ provided a step four and five analysis which "alleviates any concern that [plaintiff] might have been adjudged disabled at step three."[2] There is evidence in the record favorable to the plaintiff that the ALJ failed to discuss. The Court considered plaintiff's claims that she meets a listing and that the ALJ failed to consider the combined impact of her impairments together. On remand, the ALJ should fully explain his reasoning behind his finding that plaintiff did not meet a listing, and identify the listing considered.

Next, plaintiff combines his arguments regarding his treating physicians' opinions and the ALJ's credibility determination within the argument that the ALJ's decision is not supported by substantial evidence. Plaintiff's final two arguments that the ALJ improperly evaluated plaintiff's pain and fatigue and that he "erroneously held that the plaintiff has the [RFC] to perform light work subject to limitations," are closely woven with and reference the substantial evidence argument, so the Court will address them all together.

Since this case is being remanded on the first two allegations of error, the Court will not spend a lot of time on the remaining allegations. An ALJ's credibility findings warrant particular deference, because he is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). Thus, the ALJ's judgment regarding credibility will stand if supported by substantial evidence. Gay, 986 F.2d at 1341

---

[2] If the Court were to reweigh the evidence, it appears clear that plaintiff is not disabled at step three.

(10th Cir. 1993). In addition, this Court's review is limited and reweighing the evidence is not permissible. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). However, the ALJ made several stretches of plaintiff's testimony, for example, that she "testified she could not afford medical care." (R. 17). Plaintiff actually testified she could not afford to see Dr. Zano for every flare up, there was little that could be done for a flare up, and that Dr. Zano monitored her medication and provided refills for her. (R. 42). As to plaintiff's activities, the ALJ made similar stretches. The ALJ stated plaintiff's statements of "basically stay[ing] in bed the majority of the time" were inconsistent with her function report. (R. 18). He did not discuss that plaintiff testified at length about what she was able to do when she was not having a flare up versus when she was having a flare up. Her testimony is consistent with her function reports. The court is not convinced that the ALJ erred in his ultimate credibility finding, but the ALJ did not properly support the finding. Thus, the ALJ should reconsider plaintiff's credibility upon remand.

As to the opinions of plaintiff's treating physicians, the ALJ discussed Dr. Cooley's records and Dr. Zano's. The ALJ seemingly relied on records stating plaintiff was doing well, some from early 1997. The ALJ appears to have placed the most weight on a consultative examination by Dr. Lee. Upon remand, the ALJ should further explain the weight given the treating physicians' opinions, considering the length of the treatment relationship with plaintiff. 20 C.F.R. §§ 404.1527, 416.927.

While the ALJ mentioned Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) as a criteria for evaluating plaintiff's pain, there is little evidence in his decision he actually considered the Luna

factors. Upon remand, the ALJ should be more specific regarding his analysis of the <u>Luna</u> factors in this case.

## **<u>Conclusion</u>**

The decision of the Commissioner finding plaintiff not disabled is hereby REVERSED and REMANDED as set forth herein.

SO ORDERED this 25th day of July, 2011.

_____
T. Lane Wilson
United States Magistrate Judge